IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 15, 2009

## GARNER DWIGHT PADGETT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Putnam County**
**No. 01-0450     Leon C. Burns, Jr., Judge**

_____

**No. M2009-00297-CCA-R3-PC - Filed June 22, 2010**

The Petitioner, Garner Dwight Padgett, appeals the Putnam County Criminal Court's denial of post-conviction relief from his conviction for first degree murder. The Petitioner contends (1) that the trial court violated the Petitioner's federal and state constitutional rights at the trial by asking members of the venire whether they could be fair to both sides, thus lowering the State's burden of proof, and (2) that he received the ineffective assistance of counsel at the trial for failing to object to the trial court's asking whether the members could be fair. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

R. Luke Chaffin, Cookeville, Tennessee, for the appellant, Garner Dwight Padgett.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Randall A. York, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner was convicted of the first degree murder of Matthew Eric Smith and was sentenced to life in prison. This court affirmed the Petitioner's conviction. State v. Garner Dwight Padgett, No. M2003-00542-CCA-R3-CD, Putnam County (Tenn. Crim. App. Oct. 21, 2004), app. denied (Tenn. Feb. 28, 2005).

At the post-conviction hearing, the Petitioner testified regarding many claims. As relevant to this appeal, the Petitioner testified that he did not have an impartial jury because the local newspapers had printed a great deal about him before the trial. He said that one article claimed he was guilty and that many potential jurors had read it. He said the jury had to be selected from a venire of about seventy people because so many had been exposed to the publicity. He said some jurors first stated they had not read the article and later said they had. He said that those who had not read the article heard about it in the "green room" where the jurors waited to enter the courtroom. He said he wanted trial counsel to dismiss three jurors who stated they hoped or would try to be fair, but counsel did not challenge the jurors.

The Petitioner testified that he requested a change of venue several times. He said that trial counsel replied that a change of venue was not a choice. He said that because of the publicity, it would have been fair for him to have had a trial elsewhere. He said no motion for a change of venue was filed with the trial court.

The Petitioner testified that trial counsel asked the jurors about people who had used drugs. He said some jurors responded that they had problems with people who had used drugs and that they believed people who used drugs had "a guilty thing about them." He said the jurors should have been stricken but were not. He said that he asked trial counsel to conduct individual voir dire but that counsel did not request it.

The Petitioner testified that two jurors saw him in shackles during the trial. He said the jurors were questioned by the trial court and stated they would try to be fair. He said the jurors should have been "gone immediately." He said the entire jury should have been dismissed at that point because he was sure those jurors talked to the other jurors. However, the Petitioner agreed that he had made a mistake and had not been shackled. He said he saw the jurors when he was in lock-up.

On cross-examination, the Petitioner testified that he did not know whether the jurors who said they would try to be fair actually gave him a fair trial. He said he believed the jurors had formed an opinion against him. He agreed there was no way to tell another person's thoughts.

Counsel testified that he was the District Public Defender for the Thirteenth Judicial District and that he had been practicing law for twenty-eight years. He said the public defender's office was appointed to the Petitioner's case. He said that he believed he conducted an appropriate voir dire of the jurors but that it would have been difficult for any juror to deal with issues such as drug abuse. He said the level of pretrial publicity in this case was not unusual.

On cross-examination, counsel testified he was confident he made the decision not to file a motion to change venue. When asked why he did not strike the jurors who did not unequivocally state they could be fair to the Petitioner, counsel testified that he always consulted with his clients about exercising strikes. He said he was confident that he did so in this case and that he chose which jurors to strike in consultation with the Petitioner. He said he was sure that he used all of his strikes, but he did not have his notes to confirm that. He agreed that two jurors saw the Petitioner being escorted by a police officer and that he moved for a mistrial, which was denied. He agreed that the issue was raised on direct appeal.

Co-counsel testified that he had been an assistant public defender since April 2001 and that he had worked in private practice and as an assistant district attorney. He said he had tried "quite a few" homicides with counsel. He said he was involved in many of the meetings with the Petitioner. He said he felt the meetings were adequate to prepare a defense.

Co-counsel testified that it was usual practice for the trial court to ask, "Can you be fair? Can you set aside what you've read in the paper?" He said the trial court asked thirty-five or thirty-six jurors these questions. He said in hindsight, he would have objected to the questions. He said that in the past six years, he had come to the conclusion that asking a panel of jurors if they could be fair to both sides probably lowered the State's burden of proof. He said that in recent trials, he had begun to file motions in limine to prohibit anyone from asking a juror if he or she could be fair. He said that the State had a higher burden than the Defendant to prove all the facts beyond a reasonable doubt. He said "fair" gave the Defendant a burden of having to do "something."

On cross-examination, co-counsel testified that he did not know how one would cure the judge's asking questions about fairness. He said that if he had to do it over, there was no other issue he would have submitted to the appellate court except the trial court's questions to the jurors about fairness. He said he did not know if case law would support his argument.

The trial court found that the Petitioner had not been deprived of his constitutional rights. It also found that the Petitioner had not been denied the effective assistance of counsel.

# I

The State contends that we should dismiss the Petitioner's appeal because the Petitioner failed to file a timely notice of appeal and a waiver of the requirement of a timely notice is not in the interest of justice. The Petitioner contends in his reply brief that his appeal should not be dismissed because the notice requirement is not jurisdictional and that

a timely notice of appeal should be waived in the interest of justice.

Rule 4 of the Tennessee Rules of Appellate Procedure requires a party to file a notice of appeal within thirty days "after the date of entry of the judgment appealed from." T.R.A.P. 4(a). In the interest of justice, we may waive the notice of appeal and proceed to analyze the issues raised by the parties. Id. The trial court filed an order denying the Petitioner's petition on October 20, 2008. Therefore, the Petitioner's notice of appeal was due on November 19, 2008. The Petitioner's notice of appeal was filed on January 28, 2009. Appellate counsel has included an affidavit in the record in which he states that the untimely notice was entirely his fault and not the Petitioner's, that this was his first appointment to a post-conviction appeal, that he was experiencing difficulty communicating with his incarcerated client, that he was hospitalized from the beginning of December 2008 until Christmas 2008, and that upon his return to work, he immediately filed the notice of appeal. We conclude that the interest of justice warrants a waiver of the notice.

## II

The Petitioner contends that the trial court violated his federal and state constitutional rights by asking members of the venire if they could be fair to both sides, thus lowering the State's burden of proof. The State contends that the Petitioner has waived this claim because he did not raise it in his direct appeal, in his post-conviction petition, or at the hearing on the post-conviction petition. The Petitioner responds that he has brought a proper challenge to the constitutionality of his conviction through the Post-Conviction Procedure Act. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove the allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). A petitioner is required to provide "allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding." Id. § 40-30-104(e). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001).

The Petitioner did not object to the trial court's asking the members of the venire whether they could be fair to both sides. The Petitioner has waived this issue. See T.C.A. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . .").

## III

The Petitioner contends that he received the ineffective assistance of counsel because counsel failed to object to the trial court's questioning the venire about whether they could be fair to both sides. The State contends that the Petitioner has waived this issue because he did not raise the allegation in the post-conviction petition or at the hearing on the petition. The State also argues that the trial court's questions were proper and that trial counsel had no basis for objecting to them.

The burden in a post-conviction proceeding is on the Petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). Once a petitioner establishes the fact of counsel's errors, the trial court must determine whether those errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 688, 687-88, 694 (1984).

On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in

Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

The Petitioner argues that trial counsel's regret at not objecting to the trial court's questions and counsel's failure to take action to remedy this error constituted deficient performance. However, the Petitioner did not allege this error by trial counsel in his petition for post-conviction relief. We note that during the post-conviction hearing, trial counsel testified that in the six years since the Petitioner's trial, he had begun objecting to voir dire examination regarding "fairness." He said that he had also begun filing motions in limine to prohibit anyone from asking a juror whether he or she could be fair because he believed this lowered the State's burden of proof. In its findings of facts and conclusions of law, the trial court stated,

> Obviously, things could have been done differently, but whether or not they were – what they did was ineffective is the issue, and I find that there was no ineffectiveness in [trial counsel's] presentation of the case. Had they been doing it again, they might do it differently, but nothing would suggest that what they did deprived you of a fair trial, or that you were prejudiced by that conduct.

We conclude that the Petitioner did not show deficiency or prejudice regarding his claim of ineffectivness. See T.C.A. § 40-30-110(f). He is not entitled to relief on this issue.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE